UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MATTHEW SANCHEZ and TIANNA SANCHEZ,

                        Plaintiffs,

   - against -

COUNTY OF DUTCHESS, BENJAMIN DOTY,
GLEN BROWN, and CANDACE LYNCH,

                        Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 17-CV-6597 (CS)

Appearances:

David L. Posner
McCabe & Mack LLP
Poughkeepsie, New York
*Counsel for Defendants*

Seibel, J.

Before the Court is the motion to dismiss of Defendants Benjamin Doty, Glen Brown, and Candace Lynch ("Defendants"). (ECF No. 104.) For the following reasons, the motion is GRANTED.

## I. BACKGROUND

The following facts are taken from Plaintiffs' Second Amended Complaint, (ECF No. 13 ("SAC")), and state court records.[1] I accept as true the facts, but not the conclusions, set forth in the SAC.

---

[1] In considering a motion to dismiss, a district court "may consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011). The Court thus takes judicial notice of documents from related Family Court proceedings, *see Dabah v. Franklin*, No. 19-CV-10579, 2022 WL 973834, at *2 (S.D.N.Y. Mar. 31, 2022), *aff'd*, No. 22-845-CV, 2023 WL 3577872 (2d Cir. May 22, 2023) (summary order), "not for the truth of the matters asserted in the other

A.   **Facts**

I will summarize the relevant factual allegations, many of which are already detailed in my September 28, 2018 opinion and order, (ECF No. 43).

Plaintiffs Matthew and Tianna Sanchez are residents of Dutchess County, New York (the "County") and have four children – S.H., D.H., T.H., and N.S.[2]  (SAC ¶¶ 8, 15.)  Mr. Sanchez is the stepfather of S.H., D.H. and T.H., and N.S.'s biological father.  (*Id.* ¶ 15.)  Doty is a police officer with the County.  (*Id.* ¶ 10.)  Brown is a probation officer with the County's Department of Probation & Community Corrections.  (*Id.* ¶ 11.)  Lynch is a "CPS worker" with the County's Department of Community & Family Services – Child Protective Services ("CPS").  (*Id.* ¶ 12.)

D.H. has various behavioral issues, (*id.* ¶¶ 17-24), and on September 12, 2016, Plaintiffs filed a Person in Need of Supervision ("PINS") petition – a state court petition that asks the court to find a child to be in need of professional supervision – relating to him, (*id.* ¶ 25).  On or about September 22, 2016, Brown was assigned to D.H.'s PINS case and met with D.H. regularly.  (*Id.* ¶¶ 26-27.)

On May 12, 2017, D.H. came home from school with bruises on his face.  (*Id.* ¶ 31.)  Plaintiffs allege that he did not have any visible bruises when he left for school that morning and that he got the bruises from a fight with other children at school.  (*Id.*)  When Mrs. Sanchez called the school to inform them of the incident, the principal stated that he had no record of a fight involving D.H.  (*Id.* ¶ 33.)  Shortly thereafter, D.H. told school officials that Mr. Sanchez was responsible for his bruises.  (*Id.*)  On May 15, 2017, the principal at D.H.'s school and the

---

litigation, but rather to establish the fact of such litigation and related filings," *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

[2] Since the commencement of this matter, S.H. and D.H. have reached the age of 18.

school social worker filed a report with CPS, alleging that D.H. had claimed that he had to sleep in the garage, that Mr. Sanchez hit him on the face and arm, and that he was scared to go home. (*Id.* ¶ 34.)

On May 22, 2017, Plaintiffs called the police, asking for an officer to come to their home because D.H. was acting aggressively and breaking things that belonged to their landlord. (*Id.* ¶ 48.) Doty was the responding officer. (*Id.* ¶ 49.) Following the visit, Doty contacted CPS, (*id.* ¶ 52), and prepared a police report, (*id.* ¶ 53). Plaintiffs contend that the report was misleading and contained inaccuracies. (*Id.* ¶ 55.) Specially, Plaintiffs allege that Doty: (1) failed to mention that D.H. had admitted to falsely blaming Mr. Sanchez for his bruises, which he said he had inflicted on himself; (2) did not mention that the children showed no physical signs of abuse; (3) noted that the children seemed "off" and were not willing to speak, while also stating that D.H. and S.H. answered all of his questions; and (4) stated that Plaintiffs forced D.H. to sleep in the garage as punishment for two nights when D.H. had told school officials it was one night and had in fact never slept in the garage. (*Id.* ¶¶ 56-59.)

On May 23, 2017, Lynch visited Plaintiffs' home. (*Id.* ¶ 61.) Plaintiffs allege that, during the visit, Lynch asked Plaintiffs about their disciplinary practices, and when Plaintiffs said that they got advice from religious advisors on that subject, Lynch told Plaintiffs that they were punishing their children too harshly because of their religious beliefs. (*Id.* ¶ 92.) Following the visit, Lynch received an email from Brown providing information about the family. (*Id.* ¶ 64.) Plaintiffs contend that the email was misleading because it failed to mention D.H.'s behavioral issues and that Plaintiffs engaged in sound parenting methods with D.H. (*Id.* ¶¶ 65, 67.) Plaintiffs also allege that the email falsely stated that: (1) Plaintiffs said negative things about D.H. in front of him; (2) D.H. looked to Plaintiffs for approval while being

3

questioned by Brown; (3) Plaintiffs did not follow Brown's recommendations to get counseling for D.H. at Astor Services; and (4) Plaintiffs failed to take D.H. to youth services for counseling. (*Id.* ¶¶ 66, 72-74.)

On May 24, 2017, non-Defendants representing CPS filed against Plaintiffs pre-petition requests for temporary removal of the children from the home, alleging that the children required immediate protection because they appeared to suffer from abuse or neglect imminently endangering their life and health. (ECF No. 106-2 at 2.) In the requests, CPS alleged that it had learned from D.H., S.H. and T.H. that Mr. Sanchez committed acts of excessive corporal punishment against them, including regularly hitting them with a belt and flashlight, making them stand against the wall at length for punishment, and choking them; that D.H. was made to sleep in the garage and otherwise the children were made to sleep on the floor; that Mr. Sanchez threatened to kill D.H. and leave his body in the woods, mentioning his affiliation with the Latin Kings; and that Mr. Sanchez told the children he could read their minds and that they are practicing witchcraft. (*Id.* at 2-3.) Plaintiffs deny these accusations. (SAC ¶ 94.) On the same date, after a Family Court hearing, the children were placed into a foster home based on testimony and filings by Lynch, Brown, and officials from the children's school district. (*Id.* ¶ 95.)

Lynch submitted a "report" in connection with the removal petition initiated by CPS. (*Id.* ¶ 83.)[3] Plaintiffs allege that the report contained several falsehoods, including that: (1) Plaintiffs refused to allow S.H. to speak with Lynch privately; (2) Plaintiffs made the children sleep on the floor as punishment; and (3) CPS provided Plaintiffs with counseling and advice against physical

---

[3] The record does not contain any such report. Plaintiffs may be referring to the affidavit Lynch filed in connection with the May 30, 2017 neglect petition discussed below.

discipline. (*Id.* ¶¶ 83, 85, 89.) Plaintiffs also contend that the report contained several material omissions, including that there were no signs of physical abuse on the children and that D.H. had behavioral issues. (*Id.* ¶¶ 87-88.)

On May 30, 2017, CPS filed formal neglect petitions against Plaintiffs, alleging that Plaintiffs "fail[ed] to exercise a minimum degree of care in providing the children with proper supervision or guardianship by unreasonably inflicting or allowing to be inflicted harm or substantial risk of harm including the infliction of excessive corporal punishment" on the three older children, in the presence of the youngest child. (ECF No. 106-3 at 3, 7.)[4] The petitions were supported by an affidavit by Lynch. (*Id.* at 10-20 ("Lynch Aff. I").) Lynch's affidavit describes in disturbing detail what she was told by the children, school employees, and Brown; what she observed in the home; and Plaintiffs' previous contacts with CPS. (*Id.*) On June 26, 2017, CPS filed amended neglect petitions, with additional detail in an affidavit by Lynch. (ECF No. 106-4.)

On January 3, 2019, after a trial, the Family Court issued a Decision and Order finding that the allegations contained in the neglect petitions were sustained by a preponderance of the evidence and that Plaintiffs neglected D.H., S.H. and T.H., and derivatively neglected N.S. (ECF No. 106-5 ("FC Decision").)[5] Among other things, the Family Court found CPS's witnesses, including D.H. and S.H., to be credible, and concluded that Mr. Sanchez used excessive corporal punishment on the children by striking them with a belt and a flashlight and choking D.H.; that

---

[4] References to ECF No. 106-3 use the pagination assigned by the Court's Electronic Case Filing system.

[5] Defendants submitted the FC Decision in redacted form but missed one use of N.S.'s name on page 1, and while it redacts T.H.'s last name, it uses his full first name. The Court has placed the relevant filing – ECF No. 106-5 – under seal and directs counsel for Defendants to refile it without N.S.'s name and using only T.H.'s initials, per Federal Rule of Civil Procedure 5.2(a)(3).

Mr. Sanchez was also emotionally abusive; that Mrs. Sanchez acquiesced in and at times participated in her husband's violence and aggression toward her children; and that Mr. Sanchez committed acts of domestic violence against Mrs. Sanchez in the presence of the children. (*Id.* at 16, 19-20.)[6]  Plaintiffs invoked their Fifth Amendment privilege against self-incrimination and did not testify at the trial. (*Id.* at 8.)

Plaintiffs appealed the Family Court Decision to the Supreme Court of New York, Appellate Division. On June 9, 2021, the Appellate Division affirmed the Family Court Decision. *See generally Matter of Skye H.*, 195 A.D.3d 711 (2021).

### B.  Procedural History

The early procedural history of this case is documented in my September 28, 2018 opinion and order, (ECF No. 43). I will recount only the relevant developments since that time.

On September 28, 2018, I issued an opinion and order: (1) abstaining as to the claims for declaratory and injunctive relief; (2) staying the action as to the damages claims against Defendants pending the outcome of the Family Court proceedings; and (3) dismissing the claims against the County. (*Id.*) On June 14, 2021, following the conclusion of the Family Court proceedings, I directed Plaintiffs to advise as to whether they wished to continue their case. (ECF No. 86.) Plaintiffs failed to timely respond and I dismissed the case without prejudice for failure to prosecute. (ECF No. 87.)

After Plaintiffs successfully appealed the dismissal, (ECF No. 91), I granted Plaintiffs two months to file a Third Amended Complaint, (Minute Entry dated Sept. 5, 2023.) When Plaintiffs failed to do so, but subsequently requested additional time, (ECF No. 100), I granted

---

[6] Under New York law, "neglect" includes physical abuse of the child or physical abuse of another in the presence of the child. *See Matter of Alexander S.*, 206 N.Y.S.3d 341, 345-46 (N.Y. App. Div. 2024); *In re Kiara C.*, 926 N.Y.S.2d 566, 568 (N.Y. App. Div. 2011).

Plaintiffs another extension to file a Third Amended Complaint, noting that there would be no further extensions, (ECF No. 101). Three weeks after the deadline for the Third Amended Complaint, Plaintiffs requested another extension, which I denied. (ECF No. 103.) I directed Defendants to move against the Second Amended Complaint, and set a briefing schedule. (*Id.*) The instant motion followed. Plaintiffs have not opposed it.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*). Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

A plaintiff's failure to oppose a motion to dismiss "does not, without more, justify dismissal," *James v. John Jay Coll. of Crim. Just.*, 776 F. App'x 723, 724 (2d Cir. 2019) (summary order), especially where the plaintiff is *pro se*, *see Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 536 (S.D.N.Y. 2015). That is because "the sufficiency of a complaint is a matter of law that the district court is capable of determining based on its own reading of the pleading and knowledge of the law." *Goldberg v. Danaher*, 599 F.3d 181, 184 (2d Cir. 2010).

### III. DISCUSSION

#### A. Substantive Due Process Claims

Plaintiffs allege, pursuant to 42 U.S.C. § 1983, that Defendants violated their liberty interest in the custody of their children under the Fourteenth Amendment by mishandling their work with Plaintiffs' family and providing the Family Court with false and misleading

information that formed the basis for their children's removal.  (*See* SAC ¶¶ 151, 155, 159).  The Court construes these claims as substantive, rather than procedural, due process claims.[7]

It is "long recognized that parents have a constitutionally protected liberty interest in the care, custody and management of their children."  *Southerland v. City of N.Y.*, 680 F.3d 127, 152 (2d Cir. 2012); *see Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).  But this interest must be "counterbalanced by the government's compelling interest in the protection of children, particularly in circumstances where the protection is considered necessary as against the parents themselves."  *Estiverne v. Esernio-Jenssen*, 833 F. Supp. 2d 356, 372 (E.D.N.Y. 2011).  "To sustain a substantive due process claim against the state's perceived infringement of [a] valid liberty. . . interest[], a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Grullon v. Admin. for Child.'s Servs.*, No. 18-CV-3129, 2021 WL 981848, at *6 (S.D.N.Y. Mar. 16, 2021).

In the child removal setting, "a parent's substantive constitutional rights are not infringed if a caseworker, in effecting a removal of a child from the parent's home, ha[d] a reasonable basis for thinking that a child is abused or neglected."  *Southerland*, 680 F.3d at 152.  This reflects the Second Circuit's recognition of the need for "unusual deference [to case workers] in the abuse investigation context."  *Id.*  Still, the government "must conduct a sufficient

---

[7] "While a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the fact of the removal itself." *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 549 (E.D.N.Y. 2013), *aff'd*, 560 F. App'x 6 (2d Cir. 2014).  Plaintiffs do not allege that the procedures used to effectuate the removal of their children were constitutionally deficient.  Rather, the Court reads the SAC as a challenge to the grounds for removal – namely the allegedly false and misleading reports prepared by Defendants.  (*See, e.g.*, SAC ¶ 55, 64, 94, 97.)  I thus decline to construe the SAC as alleging procedural due process claims.  *See Sevilla v. Perez*, No. 15-CV-3528, 2016 WL 5372792, at *6 n.9 (E.D.N.Y. Sept. 26, 2016) (declining to construe plaintiff's complaint as alleging a procedural due process claim where complaint was "devoid of any allegations challenging the procedures that were available to [plaintiff] during the Family Court Proceedings").

investigation into the alleged neglect or abuse it relies upon to establish a reasonable basis for its action." *Graham v. City of N.Y*, 869 F. Supp. 2d 337, 350 (E.D.N.Y. 2012) (collecting cases). And "[c]ase workers [are not] free to substantiate a claim of abuse, for instance, by ignoring overwhelming exculpatory information or by manufacturing false evidence." *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999).

      **1.**    **Doty**

As a threshold matter, Plaintiffs fail to state a claim against Doty. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *D.J. by Comfort v. Corning-Painted Post Area Sch. Dist.*, No. 22-CV-6567, 2024 WL 989703, at *6 (W.D.N.Y. Mar. 7, 2024). This requires the plaintiff to allege "(1) that each Defendant was personally involved in the deprivation of substantive due process, and (2) that each Defendant's actions were a proximate cause of the deprivation of substantive due process." *One Barberry Real Est. Holding, LLC v. Maturo*, 698 F. Supp. 3d 252, 312 (D. Conn. 2023); *see Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

Here, Plaintiffs fail to allege that Doty played any role in the challenged conduct – that is, the removal of their children. Plaintiffs' only allegation against Doty is that he prepared a "misleading" police report documenting his visit to Plaintiffs' house. (SAC ¶ 55.) The SAC contains no allegations connecting Doty's police report to the removal of Plaintiffs' children. In fact, Plaintiffs allege, without reference to Doty, that their children "were placed into a foster home by the family court based on testimony and filings by CPS Worker Lynch, Probation

Officer Brown and officials from the Webutuck School District." (*Id.* ¶ 95.) Accordingly, the substantive due process claim against Doty is dismissed for lack of personal involvement.

### 2. Brown and Lynch

As to Brown and Lynch, the Court construes Plaintiffs' claims liberally to allege personal involvement in the removal of their children. With respect to Brown, Plaintiffs contend that Brown sent Lynch a misleading email about Plaintiffs' family, (*id.* ¶¶ 64-78), which he plausibly understood would be used in connection with the removal and neglect proceedings, and which is presumably the "letter" from Brown to which Lynch refers in her affidavit, (Lynch Aff. I ¶ 5j, 5l.) With respect to Lynch, Plaintiffs allege that Lynch filed a false and misleading report in connection with CPS's removal petition on which the Family Court relied in granting the petition. (SAC ¶¶ 83-97.)

Nevertheless, Defendants contend that Plaintiffs cannot plausibly state a substantive due process claim for the deprivation of their right to the custody of their children because they are collaterally estopped, by virtue of the Family Court Decision, from arguing that they did not neglect their children. (ECF No. 107 ("Ds' Mem.") at 11-13.) The Court agrees.[8]

#### a. Collateral Estoppel

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). Federal

---

[8] Plaintiffs filed their SAC on January 2, 2018, approximately seven months before the July 2018 trial and one year before the resulting Family Court Decision. Despite having several opportunities to amend their SAC in light of the Family Court Decision, (Minute Entry dated Sept. 5, 2023; ECF No. 101), Plaintiffs failed to do so. The Court thus reads Plaintiffs' SAC as challenging CPS's initial removal of the children, not the Family Court Decision. The Court can thus apply collateral estoppel, where appropriate, to issues determined by the Family Court in its January 2019 Decision.

11

courts are "required to consider . . . the law of the State in which the judgment was rendered to determine its preclusive effect." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985); *see Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). "The party seeking to apply [collateral estoppel] bears the burden of showing that the issues are identical and were necessarily decided in the prior action, and the party opposing its application bears the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues." *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *8 (E.D.N.Y. Mar. 11, 2016).

Both requirements are met here. As to the first factor, Plaintiffs allege that they did not neglect their children and that Brown's and Lynch's accusations in that regard were false, thus rendering CPS's removal of their children unreasonable. (*See e.g.*, SAC ¶¶ 94-97.) But in its January 3, 2019 Decision, the Family Court sustained the allegations in CPS's petitions and found that Plaintiffs neglected D.H., S.H. and T.H., and derivatively neglected N.S. (FC Decision at 20.) Plaintiffs thus seek to relitigate an issue – whether they neglected their children – identical to an issue already decided by the Family Court. Determination of that issue was necessary to the Family Court proceedings, as it was the purpose of those proceedings under Article 10 of the New York Family Court Act. The determination that Plaintiffs neglected their children was also necessary to the remedy imposed by the Family Court: granting CPS's neglect petitions, (FC Decision at 20), and ultimately ordering that the children remain in the custody of

the Dutchess County Department of Community and Family Services, *Matter of Skye H.*, 149 N.Y.S.3d at 537; *see Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 83 (2d Cir. 2019) ("The necessity requirement is met where, as here, the issue is essential to the remedy imposed.").

As to the second factor, Plaintiffs have presented no reason to believe they lacked a full and fair opportunity the litigate the issue of neglect in the Family Court proceedings. Indeed, even without their input, the record is clear that they had such an opportunity. "Under New York law, a determination whether a full and fair hearing was provided requires consideration of the realities of the prior litigation, including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." *In re Sokol*, 113 F.3d 303, 307 (2d Cir. 1997). In the context of child neglect proceedings, the Second Circuit found this requirement satisfied where there was a "three-day hearing held by the family court judge, at which [the parent] was represented by counsel and had the opportunity to present evidence." *Phifer v. City of N.Y.*, 289 F.3d 49, 60 (2d Cir. 2002). Plaintiffs here meet this standard: they were represented by counsel, (FC Decision at 2), and were given the opportunity to testify during the trial that resulted in the Family Court's Decision, (*id*. at 8). That Plaintiffs chose not to testify and instead invoked their Fifth Amendment privilege against self-incrimination during the Family Court proceedings does not preclude the Court's finding that Plaintiffs had a full and fair opportunity to litigate. *See Samirah v. Sabhnani*, 772 F. Supp. 2d 437, 444 (E.D.N.Y. 2011) ("[D]efendants' invocation of their Fifth Amendment privilege . . . does not affect the concept of whether the defendants had a full and fair opportunity for litigation in the prior proceeding and is no bar to the application of the doctrine of collateral estoppel."); *Resnik v. Coulson*, No. 17-CV-676, 2019 WL 1434051, at *6 (E.D.N.Y. Mar. 30, 2019) ("[T]he opportunity for a litigant to make strategic

choices, such as invoking Fifth Amendment privileges, is part and parcel of a full and fair opportunity to litigate.").

Accordingly, Plaintiffs are collaterally estopped from relitigating the Family Court's finding that Plaintiffs neglected D.H., S.H. and T.H. and derivatively neglected N.S.

### b. Sufficiency of Substantive Due Process Claims

Given that Plaintiffs cannot deny that they in fact neglected their children, it is entirely implausible that the children's removal, based in part on statements by Brown and Lynch accusing Plaintiffs of doing so, was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection," *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999), or lacked a "reasonable basis," *Southerland*, 680 F.3d at 152.[9]

To the extent Plaintiffs accuse Brown and Lynch of "ignoring overwhelming exculpatory information or . . . manufacturing false evidence," *Wilkinson ex rel. Wilkinson*, 182 F.3d at 104, those allegations are insufficient to revive their claims. Plaintiffs allege that both Brown and Lynch left out important facts in their statements, including that: (1) the children showed no

---

[9] Much of the information Lynch provided in her affidavit was a summary of information provided to her by others, and the same is true of some of the information provided by Brown to Lynch. While Plaintiffs allege that that information was false, they do not allege that it was not provided to Lynch and Brown. Even where – unlike here – the information on which CPS relies is not ultimately sufficient to support a neglect petition, that does not mean CPS lacks a reasonable basis for its petition. *Bey v. Antoine*, No. 19-CV-1877, 2019 WL 3081458, at *7 (E.D.N.Y. July 15, 2019). "In applying a reasonableness standard in the abuse context, courts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between difficult alternatives often need to be made on the basis of limited or conflicting information." *Wilkinson ex rel. Wilkinson*, 182 F.3d at 105; *see Est. of Keenan v. Hoffman-Rosenfeld*, 833 F. App'x 489, 492 (2d Cir. 2020). It is hard to see how reliance on detailed information from the children and employees at their school could be unreasonable, even if it had turned out not to be sufficient to establish neglect.

signs of physical abuse during their visits, (SAC ¶¶ 63, 81, 88); (2) Plaintiffs engaged in sound parenting methods, such as taking the children on hikes and to church, (*id.* ¶ 67, 69); and (3) D.H. had behavioral issues, (*id.* ¶¶ 65, 87).  But these facts hardly amount to overwhelming exculpatory evidence.  *See Chayo v. Kaladjian*, 844 F. Supp. 163, 169 (S.D.N.Y. 1994) ("[T]he mere fact that no evidence of abuse was discovered at the home was not a basis for concluding there was no imminent danger."); *In re Jaivon J.*, 48 N.Y.S.3d 769, 771 (N.Y. App. Div. 2017) ("[T]he absence of physical injury is not dispositive."); *In re Cheryale B.*, 995 N.Y.S.2d 135, 136 (N.Y. App. Div. 2014) ("Although parents have a right to use reasonable physical force against a child in order to maintain discipline or to promote the child's welfare, the use of excessive corporal punishment constitutes neglect."); *cf. Estiverne*, 833 F. Supp. at 373 (defendant doctor not entitled to summary judgment where he ignored exculpatory evidence that two other doctors determined that the child's injuries reflected a low probability of abuse).

And insofar as Plaintiffs allege that Brown and Lynch made false statements that do not strictly relate to whether Plaintiffs neglected their children,[10] it is implausible, and indeed inconceivable, that those allegedly false statements caused any deprivation of Plaintiffs' familial rights.  "To state a claim under Section 1983, a plaintiff must show:  (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages." *Bender v. City of N.Y.*, No. 09-CV-3286, 2011 WL 4344203, at *3 (S.D.N.Y. Sept. 14, 2011). And a plaintiff cannot establish causation if it is clear that the adverse action would have been taken anyway.  *See Ezagui v. City of N.Y.*, No. 09-CV-5628, 2012 WL 13210076, at *4 (S.D.N.Y. July 24, 2012); *Settlemeyer v. Ditsch*, No. 20-CV-221, 2021 WL 1751306, at *6 (D. Ariz. May 4, 2021); *cf. Miller v. City of Philadelphia*, 174 F.3d 368, 377 (3d Cir. 1999).  Here,

---

[10] As explained above, Plaintiffs are estopped from denying the neglect itself.

Plaintiffs allege that Brown and Lynch made several false statements concerning their interactions with Plaintiffs' family, including that: (1) Plaintiffs said negative things about D.H., (SAC ¶ 66); (2) D.H. looked to Plaintiffs for approval while Brown questioned him, (*id.* ¶ 72); (3) Plaintiffs did not follow Brown's recommendation to seek counseling for D.H., (*id.* ¶ 73-74); and (4) Plaintiffs refused to let S.H. speak with Lynch privately, (*id.* ¶ 83). But it is clear, based on the remaining facts alleged in CPS's application for pre-petition removal (and later found by the Family Court) – including that Mr. Sanchez regularly hit the children with a belt and a flashlight, made them stand against the wall as punishment, and made them sleep on the floor or in the garage, (ECF No. 106-2 at 2) – that the Family Court would have ordered their children removed anyway, s*ee e.g.*, *Matter of Alexander S.*, 206 N.Y.S.3d at 346 (finding neglect where parent hit child with a belt); *Matter of Balle S.*, 147 N.Y.S.3d 292, 294 (N.Y. App. Div. 2021) (finding neglect where parent repeatedly struck child with a phone charger cord and a rubber tube). In other words, it is wholly implausible that, absent the four allegedly false statements set forth above, the children would not have been removed from Plaintiffs' custody, and thus those statements could not have caused any deprivation of Plaintiffs' rights.

Accordingly, Plaintiffs cannot plausibly state a claim that either Brown or Lynch violated their substantive due process right to the custody of their children.

    **B.**    **Free Exercise Claim**

Plaintiffs also allege, pursuant to § 1983, that Lynch violated their First Amendment right to religious freedom by "arranging the removal of Plaintiffs' children from their home based at least in part on her distaste for Plaintiffs' religious beliefs." (SAC ¶ 160.) The Court interprets this as a Free Exercise claim.

The Free Exercise Clause, which is applicable to the states through the Fourteenth Amendment, *see Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022), provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]," U.S. CONST. amend. I. "Under the Free Exercise Clause, state action that expresses hostility toward religion is subject to strict scrutiny." *King v. City of N.Y.*, 581 F. Supp. 3d 559, 573 (S.D.N.Y. 2022), *aff'd,* No. 22-231, 2023 WL 2398679 (2d Cir. Mar. 8, 2023); *see Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 638-39 (2018) ("The Constitution commits government itself to religious tolerance, and upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and to the rights it secures.").

Plaintiffs rely on a single statement by Lynch to support their claim that she arranged for the removal of their children "at least in part on her distaste for Plaintiffs' religious beliefs." (SAC ¶ 91.) Specifically, Plaintiffs allege that, when they told Lynch that they took advice from religious advisors about disciplinary methods, Lynch responded that Plaintiffs were "punishing the children too harshly because of Plaintiffs' religious beliefs." (*Id.* ¶ 92.) This allegation is insufficient to plausibly allege that Lynch acted out of animosity toward Plaintiffs' religion in initiating removal proceedings against Plaintiffs. To start, the SAC "does not even identify what religious beliefs [P]laintiffs hold." *People United for Child., Inc. v. City of N.Y.*, 108 F. Supp. 2d 275, 298 (S.D.N.Y. 2000). More to the point, the only plausible reading of Lynch's statement is not as an expression of opinion about Plaintiffs' religion, but rather as disapproval of what she perceived (correctly, as it turned out) to be abuse. It is plain that Lynch would have sought removal regardless of what Plaintiffs said about the source of their views that their "discipline" of the children was appropriate. The First Amendment "do[es] not excuse [Plaintiffs'] from

compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Goldstein v. Hochul*, 680 F. Supp. 3d 370, 397 (S.D.N.Y. 2023); *see De'Bey v. City of N.Y.*, No. 20-CV-1034, 2021 WL 8013765, at *11 (S.D.N.Y. Oct. 26, 2021) (finding no Free Exercise violation where plaintiff, who was vegan pursuant to religious beliefs, was found to have neglected child based on reports of malnourishment).

Accordingly, the First Amendment claim against Lynch is dismissed.

## IV.     LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### A.     Claims against Doty, Brown, and Lynch

I have given Plaintiffs repeated opportunities to amend their claims against Doty, Brown, and Lynch, (Minute Entry dated Sept. 5, 2023; ECF No. 101), including after having the benefit of Defendants' pre-motion letter outlining the grounds for their motion to dismiss, (ECF No. 94), and the discussion at the pre-motion conference regarding the complaint's deficiencies, (*see* Minute Entry dated Sept. 5, 2023). Plaintiffs have not availed themselves of these opportunities. Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a

second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiffs have not asked to amend or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this ruling.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

Accordingly, I decline to grant leave to amend the claims against Doty, Brown, and Lynch *sua sponte*.

### B. <u>**Claims Against the County**</u>

For the same reasons, I also grant Defendants' request, (Ds' Mem. at 2-3), to deny leave to amend the claims against the County. Plaintiffs were given an opportunity to amend their claims against the County after I dismissed the claims in my September 28, 2018 order, (Minute Entry dated Sept. 5, 2023), and failed to do so. Further, Plaintiffs have not asked to amend their claims against the County or otherwise suggested that they are in possession of facts that would cure the deficiencies that led to dismissal.

Accordingly, I now dismiss the claims against the County with prejudice.

### V. <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 104), and close the case.

**SO ORDERED.**

Dated: September 25, 2024
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.